

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-22-00246-CR |
| Appellant, | § | Appeal from the |
| v. | § | 243rd Judicial District Court |
| CHRISTOPHER THRASHER, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20220D03279) |

## MEMORNADUM OPINION

The State appeals an order of the trial court granting appellee Christopher Thrasher's motion for new trial. A jury found Thrasher guilty of indecency with a child by sexual contact following the guilt-innocence stage of trial. *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (a)(2), (c)(2). For punishment, Thrasher elected sentencing by the trial court. After receiving punishment evidence, the trial court imposed a sentence of two years' confinement and signed a judgment of conviction based on the jury's verdict. The trial court next heard argument on Thrasher's motion for new trial, which was based on two grounds: (1) that the jury's verdict was contrary to the law and the evidence; and (2) that due process and the interest of justice required a new trial. The trial court next granted a new trial based on insufficient evidence. Because we conclude the trial court

abused its discretion by its ruling, we reverse the new trial order, and we reinstate the jury's verdict and the trial court's judgment.

## I.   BACKGROUND

### A.   Jury trial

During a jury trial on guilt-innocence,[1] the State produced evidence through multiple witnesses and exhibits to include surveillance video from an arcade of a local restaurant. In November 2018, L.A.[2], who was then 14 years old, went with her family to the Dave and Buster's Restaurant in El Paso. After L.A. finished eating, she went with her three-year-old niece to play video games in the arcade area of the establishment. Placing her niece on her lap, L.A. first played a seated racing game. While playing the game, L.A. noticed a father and son to her left. L.A. identified Thrasher, while she testified in the courtroom, confirming he was the man she saw on that occasion.

While she played the first game, L.A. testified that Thrasher spoke to her. He said, "you drive nice," or something about the game. She responded, "yeah," and kind of laughed. The surveillance video that was played to the jury showed L.A., her niece, Thrasher, and his son, all at the racing game. Thrasher first stood in the middle of the game and then moved to L.A.'s right side. When the game finished, L.A. moved to another game with her niece. As they walked away, Thrasher also left the game. L.A. next played a 3D zombie game, a seated game. To enter the game, L.A. ducked under a short curtain. While she played the game with her niece, Thrasher's

---

[1] Thrasher was originally found guilty by a jury on one count of indecency with a child by sexual contact. Thereafter, an agreed notice of new trial was entered on March 23, 2022. The case was later transferred to different district courts before it was eventually transferred to the 243rd District Court of El Paso County. The State reindicted Thrasher on August 30, 2022.

[2] Because the complaining witness was a minor at the time the offense was committed, we use initials for privacy protection. *See* TEX. R. APP. P. 9.10(a)(3).

son came in and out of the area. L.A. was not aware of Thrasher also being present, explaining she had paid more attention to the game. On surveillance video, however, Thrasher is seen partially opening the short curtain as his son entered and exited.

When the game ended, L.A. and her niece moved to a Walking Dead game. This was another seated game. To play, two players sat in a booth. L.A. noticed Thrasher stood on her side of the game. On direct examination, the State elicited the following testimony:

. . .

L.A.: I noticed he was standing there, and he was really close. And that's-- I saw him looking down from the screen. Because on the screen, there's, like, a little black part where it's kind of reflective where you can see. And I just saw him looking down.

THE STATE: Okay. So you were in the game. You can see him to your right. Am I understanding that correctly?

L.A.: uh-huh.

. . .

THE STATE: Okay. And what did you say he was doing at that time?

L.A.: He was looking down making faces, like, kind of like—

THE STATE: Do you know what kind of faces or can you remember them?

L.A.: They were kind of like-- he was kind of, like, biting his lip, kind of going-- like, I don't know how to explain the type of faces he was making.

THE STATE: Okay. And when you noticed him making those faces and sort of looking down in that reflection, what did you do?

L.A.: I kind of looked down. Like, I didn't try to make it obvious. I just look down like this. And I saw what he was doing, and then I kind of froze up.

THE STATE: Okay. When you say you saw what he was doing, what did you see?

L.A.: He was rubbing his penis area on where I had my things. I was like this. He was kind of leaning, like, my elbow and around my hip area.

3

THE STATE: Okay. So his-- his penis area was actually touching your body?

L.A.: Yes, ma'am.

THE STATE: And when you say he was rubbing it around, what do you mean?

L.A.: He was kind of, like, just moving his waist around that area.

THE STATE: Okay. Were you able to-- besides feeling what he was doing to your body, were you able to see anything?

L.A.: No ma'am. After I saw what he was doing, I looked straight at the game. And I kind of just froze up. A lot of things were going through my head. I didn't know what to do. So at that moment, I was just-- I didn't look back down.

THE STATE: Okay. Now, you said he was rubbing his penis area against your arm and thigh area because you were seated and then, you know, you were like that and your legs were up. How did you know it was his penis area?

L.A.: Because the bulge that comes out of the pants.

THE STATE: Okay. So you observed a bulge in his pants. And that's the area that was touching you?

L.A.: Yes, ma'am.

On cross examination, defense counsel asked L.A. further questions about her description of what occurred when she played the Walking Dead game:

.     .     .

DEFENSE COUNSEL: And while that is going on, you're saying that you felt him touching you?

L.A.: No. I didn't feel him touching me.

DEFENSE COUNSEL: Okay.

L.A.: I-- I saw him, then I looked down. And then that's when, like, I saw what he was doing.

DEFENSE COUNSEL: Okay. But you didn't feel him touching you?

L.A.: No.

4

DEFENSE COUNSEL: Oh, okay. Okay.

L.A.: It's a—his-- everything was still in his clothes.

DEFENSE COUNSEL: Yes.

L.A.: It was just his bulge. And I had my clothes on, so I didn't really feel it on my skin because I had a hoodie on and then I had my pants on. So I didn't feel him touch my skin, but he was touching my-- the outside of my clothes, my body right here.

DEFENSE COUNSEL: Sure. No, I understand it wasn't skin to skin. But let's say just-- for instance, if I-- if I come over here and I lean into my co-counsel here, she can feel that.

L.A.: Yes, ma'am.

DEFENSE COUNSEL: So you're saying you didn't feel anything or you—

L.A.: I didn't feel anything right here.

DEFENSE COUNSEL: Okay. Okay.

.      .      .

On redirect, the State returned to the same line of inquiry, as follows:

THE STATE: Okay. And so we're going to have to go through it kind of step by step just so we're clear. His penis skin to skin never touched you?

L.A.: No, not skin to skin.

THE STATE: Okay. When you looked down, what were you able to see through his clothing?

L.A.: The bulge.

THE STATE: Okay. And did that portion of his clothing touch you?

L.A.: Yes, ma'am.

THE STATE: Okay. And where did it start to touch you?

L.A.: It started going from, like, kind of my elbow. And then when he kind of was, like, moving around, it started going towards my, like, waist area, my hip area, waist area right here. And then-- yeah.

THE STATE: Okay. And while you can't feel his skin against your skin, you were very clear that he was touching your body with his penis?

L.A.: Yes ma'am.

THE STATE: Okay. And how did you know it was his penis?

L.A.: Because of where the zipper was and where the bulge of where his penis is.

THE STATE: Okay. Thank you.

On re-cross, Thrasher's attorney asked L.A. further questions, which she answered as follows:

DEFENSE COUNSEL: So, [L.A.], I'm a little confused because I gave you a little demonstration, me touching my daughter through clothing. And of course I touch her hard enough that she would feel it. And I thought that you said you didn't feel it.

L.A.: I didn't feel it.

DEFENSE COUNSEL: You did not?

L.A.: No.

On its final redirect, the State asked L.A. to clarify her testimony as follows:

THE STATE: When you say you didn't feel it, what do you mean? You didn't feel what?

L.A.: Well, I didn't feel his penis on me. I just felt, like, the motion, I guess. But I didn't feel his penis.

THE STATE: Okay.

.          .          .

THE STATE: You said that he was near you and he was moving his body?

L.A.: He was moving this-- like, his area.

THE STATE: That area?

L.A.: His hips were moving.

THE STATE: Okay. And was his body-- was any part of him touching you?

L.A.: Not-- just his penis, like, just his bulge area.

THE STATE: Okay. That part was touching you?

L.A.: Yes.

On defense counsel's last re-cross of L.A., the line of questioning continued:

DEFENSE COUNSEL: [L.A.], you believe it was touching you because you saw it touching you?

L.A.: I saw it touching me.

DEFENSE COUNSEL: But you did not feel it?

L.A.: No. I didn't feel it skin to skin contact.

DEFENSE COUNSEL: Okay. That's what we were trying to figure out. I understand you didn't feel skin to skin because you had clothing and he had clothing.

L.A.: Yes.

DEFENSE COUNSEL: Okay. But are you saying you felt--

L.A.: The motion of him moving around this area, yes, I did. Like, him around this area, moving around, I felt that. But we did not have skin to skin contact.

DEFENSE COUNSEL: Okay. No, I know that you nobody thinks you had skin to skin contact. What were trying to say is that when you were describing what happened, you said you saw it. But it sounded like you didn't-- you were alerted by something you felt.

L.A.: No. Once I saw it, that's when I was like, he's touching me. Like--

DEFENSE COUNSEL: Because you saw it?

L.A.: Because I saw it.

DEFENSE COUNSEL: Not because you felt it?

7

L.A.: I felt the motion, like of him moving around in that area. I felt that.

In completing her testimony, L.A. testified the situation caused her to freeze up and she had thoughts going through her head. At first, she worried about her niece. She testified, "[m]y first thought was my niece because I didn't want anything to happen to her, so I kind of put her in the middle between me and his son." Next, she wanted to flee. "And then my next thought was, How do I get out of here. That, like–making it, like, obvious that I knew because I didn't want him to know that I knew." Finally, ending her game on purpose, she said, "And then – yeah. And then after that, I kind of just died on purpose. And I grabbed my niece, and I just went out of the way. I just left." Feeling disbelief and shock, she went back to her family, sat down, and curled her legs up to her chest.

L.A.'s mother testified that L.A.'s appearance alarmed her. She asked L.A. what was wrong, but she did not say anything. L.A.'s mother continued talking with the family at the table but kept looking at L.A. She finally told L.A.: "No, wait a minute. There is something wrong with you." L.A.'s mother next described how L.A. responded:

> She told me that she was playing the games, and she was going around playing different games. And she went into the mummy game or the zombie game. And she said she had [L.A.'s niece] on her lap, and she was playing the game and that there was this man. I guess she said he was following her while she was going to the different games. And then she said she was playing and the man followed her to that game. The little boy was playing on the opposite side of her with her -- with the son. And she said that the guy came around her to the side of her and was putting his erect penis on her arm and rubbing on her.

After hearing from L.A., her mother and family were upset. At that point, her mother, L.A., and her sister all went looking for Thrasher. When they found him it appeared as if he was sitting with his wife and two children. L.A. confirmed his identity to her mother. Her mother described that Thrasher's eyes "went kind of wide like he was shocked." L.A.'s mother testified she pointed

directly at his face while saying, "how dare he do this to a 14-year-old littler girl." He responded, "I'm here with my son." The manager soon came over and accompanied L.A., her mother, and her sister back to their table. He then called for police.

The responding officer and two detectives also testified to the investigation that followed. Connected to their work, the State entered into evidence the photo lineup administered to L.A. The detective involved described that he followed a double-blind procedure, meaning he himself did not know the identity of the alleged offender among the photographs included in the array displayed. Before showing any photographs, he read instructions to L.A., and she verbally confirmed her understanding. The instructions informed her that she would be shown each photograph, one at a time, and for each, she would be asked: "Is this the person who: rubbed his private part on you . . .?" The detective testified that L.A. identified photo #3. He described that she signed her name and wrote next to the picture that she was 90% sure. He asked her: "What about this photo makes you believe this is the person?" L.A. wrote next to the photo "his eyes and shape of his face." The officer also testified that L.A. had originally written 50% certainty next to the picture she chose then she changed her answer to 90%. The comment section of photo #3 shows that L.A. scratched out 50, then wrote 90, and initialed her correction.

At the close of the State's case in chief, Thrasher's counsel moved for a directed verdict, arguing that L.A. never testified she felt any contact, only movement. The State opposed the motion, countering that more than a scintilla of evidence established that L.A. felt movement, although it was not skin to skin. The State also claimed that L.A.'s excited utterances to her mother added further detail to the evidence presented. After extensive argument, the trial court denied Thrasher's motion for directed verdict. Defense counsel next moved for a dismissal based on Brady violations. The trial court also denied that motion.

In the defense case in chief, Thrasher presented only one witness, a manager of Dave and Buster's, who principally testified about the operation of the security cameras located at the establishment.

After deliberating, the jury returned a verdict finding Thrasher guilty of indecency with a child by sexual contact. Based on his election, the State later presented punishment testimony to the trial court. Before the court imposed its sentence, Thrasher filed a motion for new trial based on two grounds: (1) the verdict is contrary to the law and the evidence pursuant to TEX. R. APP. P. 21.3(h); and (2) in the interest of justice. No attachments were included with his motion. The State responded in opposition, attaching to its response the jury's verdict finding Thrasher guilty, limited excerpts of L.A.'s transcribed trial testimony, and Thrasher's election to be sentenced by the court. The trial court then set back-to-back hearings for sentencing and for a hearing on the motion for new trial, both on the same date. At the sentencing hearing, the trial court imposed a sentence of two years' confinement in the Texas Department of Criminal Justice Institutional Division and signed a judgment of conviction.

## B. Motion for new trial

The court next presided over a non-evidentiary hearing on Thrasher's motion for new trial, hearing argument from both sides. Thrasher argued that L.A.'s testimony never revealed she felt his genitals but only that she saw him rub the area against her. Thrasher asserted that absent a physical sensation confirming a touch, the evidence was insufficient to sustain a conviction. Additionally, Thrasher asserted there was insufficient evidence of causation because L.A. did not engage in any conduct at all. Thrasher argued there was no evidence that he "caused" L.A. to do anything.

By written order, the trial court granted the motion for new trial based on insufficient evidence. The trial court followed this ruling by entering findings of fact and conclusions of law. The following relevant findings of fact were provided:

> 5. At trial, [L.A.] testified that she did not feel [Thrasher] touching her when she saw him touching her; that she became aware that [Thrasher] was touching her because she saw him touching her in the reflection that she could see in the border of the screen of the video game she was playing at the time.

> 6. [L.A.] believed, based on what she saw, that [Thrasher] toucher her arm and/or leg with his penis, through their clothing.

> .      .      .

> 8. [L.A.'s] was the only witness that could have provided evidence of actual, physical contact and feeling of [Thrasher's] genitals, as well as whether [Thrasher] caused her to engage in sexual contact.

Additionally, the trial court made the following relevant conclusions of law:

> 3. An essential element of the offense of indecency with a child by contact is that there be sexual contact. Sexual contact is defined as "any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person." Put more simply, sexual contact requires contact with a sexual body part. Additionally, sexual contact requires perceiving the sense of touch; perceiving the sense of feeling. Although contact through clothing can be considered sexual contact, the touching must be felt (i.e., "perceive[d] by the sense of feeling" to constitute "touching." . . . .

> 4. There was no evidence at trial that [L.A.] ever felt [Thrasher's] penis touch her. Her belief that she saw (in the reflection in the border of the video game she was playing) [Thrasher's] penis touch her arm or leg is insufficient evidence of sexual contact because there is no sensation of touching. If there is no feeling of touch, there is no contact. At most, the evidence borne out at trial was that the complaining witness felt "motion in that area." Feeling "a motion" is insufficient to constitute sexual contact under the applicable statute. . . .

> 5. There was no evidence at trial that defendant caused the complaining witness to take any action constituting sexual contact.

> 6. Viewing the evidence in the light most favorable to the verdict, there was legally insufficient evidence of sexual contact by [Thrasher], and of any act taken by the complaining witness that resulted in her engaging in sexual contact, from which a

11

rational trier of fact could have found the State proved all of the essential elements of the offense, as charged in the re-indictment, beyond a reasonable doubt.

7. The State's failure to prove the statutory language of indecency with child by contact, as pled in the charging instrument is a material variance; one which prejudices [Thrasher's] substantial rights, renders the evidence legally insufficient to support the conviction, and required an acquittal. . . .

The State appealed from the trial court's order granting defendant's motion for new trial. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(3) (setting out the State's entitlement to appeal an order granting a motion for new trial).

## II. DISCUSSION

In its sole issue, the State asserts the trial court abused its discretion when it granted Thrasher's motion for new trial based on the sufficiency of the evidence. Specifically, the State asserts a rational trier of fact could have found, beyond a reasonable doubt, that Thrasher intentionally or knowingly caused L.A. to engage in sexual contact when he touched her body with his genitals.

### A. Standard of review

Rule 21 of the Texas Rules of Appellate Procedure governs motions for new trial. *State v. Zalman*, 400 S.W.3d 590, 593 (Tex. Crim. App. 2013); *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007) ("The legal grounds for which a trial court *must* grant a new trial are listed in Rule 21.3, but that list is illustrative, not exclusive.); *see also* TEX. R. APP. P. 21.3 (grounds for new trials in criminal cases). A grant of a new trial, however, is not unbounded or unfettered. *Zalman*, 400 S.W.3d at 593. For example, "[a] judge may grant or deny a motion for new trial 'in the interest of justice,' but justice means in accordance with the law." *Id*. Stating it differently, "[a] judge may not grant a new trial on mere sympathy, an inarticulate hunch, or simply because [the judge] believes the defendant received a raw deal or is innocent." *Id*. "To grant a new trial for a

non-legal or legally invalid reason is an abuse of discretion." *Herndon*, 215 S.W.3d at 907. Thus, a trial court's grant of a motion for new trial is reviewed for an abuse of discretion. *Id*. Moreover, the abuse of discretion standard applies when the State brings an appeal under art. 44.01(a)(3) of the Code of Criminal Procedure. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993) (en banc).

The Court of Criminal Appeals has repeatedly held that "[a]n essential element of [a motion for new trial] is that the matter of error relied upon for a new trial must be specifically set forth therein." *Zalman*, 400 S.W.3d at 594. This pleading requirement has two purposes: (1) to allow for enough notice for the trial court to prepare for the hearing and make informed rulings; and (2) to allow the State enough information to prepare a rebutting argument. *Id*. "[T]rial courts do maintain the authority to order new trials for evidentiary insufficiency in criminal cases[.]" *State v. Savage*, 933 S.W.2d 497, 499 (Tex. Crim. App. 1996). Yet, granting a new trial for insufficient evidence is functionally equivalent to an acquittal. *Id*. Nonetheless, a motion asserting a defendant is entitled to a new trial because the verdict was "contrary to the law and the evidence," asserts a valid legal claim. *Zalman*, 400 S.W.3d at 594; *see also* TEX. R. APP. P. 21.03(h). This ground, however, raises a sufficiency challenge and *only* a sufficiency challenge. *Id*. (citing *Bogan v. State*, 180 S.W. 247, 248 (1915)).

In such a case, a trial court must apply the same legal test as is employed by appellate courts. *See State v. Fuller*, 480 S.W.3d 812, 819–20 (Tex. App.—2015, pet. ref'd) (quoting *State v. Savage*, 905 S.W.2d 272, 274 (Tex. App.—San Antonio 1995, *aff'd*, 933 S.W.2d 497 (Tex. Crim. App. 1996)). Accordingly, it must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of

13

the offense beyond a reasonable doubt. *Id.* If the evidence meets the legal sufficiency standard, the trial court commits an abuse of discretion in granting the motion for new trial. *Id.*

In evaluating such ruling, we also must review the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, that the defendant committed the offense charged. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We examine legal sufficiency under the direction of *Brooks*, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

## B. Applicable law

A person commits the offense of indecency with a child younger than 17 years of age when the person "engages in sexual contact with the child or causes the child to engage in sexual contact." TEX. PENAL CODE ANN. § 21.11(a)(1); *Pena v. State*, No. 08-16-00236-CR, 2019 WL 1374152, at *4 (Tex. App.—El Paso, Mar. 27, 2019, pet. ref'd) (not designated for publication). As relevant here, "sexual contact" means "any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person," when

14

committed with the intent to arouse or gratify the person's sexual desire. TEX. PENAL CODE ANN. § 21.11(c)(2).

### C. Analysis

The trial court provided two grounds for concluding there was insufficient evidence to support the jury's verdict of guilty. Those grounds in turn formed the basis for it exercising its discretion in granting Thrasher's motion for new trial. First, it concluded there was no evidence at trial of sexual contact. Second, it concluded there was no evidence of Thrasher causing L.A. to take any action constituting sexual contact. On review, we address each ground in turn.

### (1) *Evidence of sexual contact*

The trial court concluded there was no evidence that L.A. ever felt Thrasher's penis touch her. Rather, she only believed she saw—in the reflection of the video game she was playing—that his penis touched her arm or leg. Thrasher asserts on appeal that the trial court thoughtfully reviewed the evidence using the correct legal standards; that is, that it did not abuse its discretion in granting a new trial based on insufficient evidence. He asserts there were no inconsistencies in L.A.'s testimony on whether she felt a "touching" in the context of sexual contact. He contends there was "no evidence" of such touching. He claims that L.A.'s testimony did not meet the legal definition of sexual contact because there was no evidence that she ever felt Thrasher's penis touch her body.

To support his argument, Thrasher points to cases holding that "the essence of the act of touching is to perceive by the sense of feeling." *See Resnick v. State,* 574 S.W.2d 558, 560 (Tex. Crim. App. [Panel Op.] 1978); *Tienda v. State*, 479 S.W.3d 863, 873 (Tex. App.—Eastland 2015, no pet.). Thrasher's cited cases, however, primarily considered whether sexual contact can occur with multiple layers of fabric between a complaining witness and an accused. *See Resnick,*

15

574 S.W.2d at 560; *Tienda*, 479 S.W.3d at 873. Such cases generally hold that clothing or multiple layers of fabric will not prevent a sexual contact as a matter of law. *See Resnick,* 574 S.W.2d at 560; *Tienda*, 479 S.W.3d at 873. More recently, the Eastland Court of Appeals relied on these cases when it similarly described "the essence of the act of touching is to perceive by the sense of feeling." *Roe v. State*, 660 S.W.3d 775, 782 (Tex. App.—Eastland 2023, pet. ref'd) (quoting *Resnick,* 574 S.W.2d at 560). *Roe* noted that "touching for the purpose of sexual contact occurs when it is *perceived* or *felt* by the person that is touched." *Id*. (emphasis added). That is, irrespective of the manner in which a defendant impermissibly touches a minor victim, if the touch was *felt* by the victim and *done* with the requisite mental intent, it constitutes indecency with a child by contact. *See id*.

Here, the record shows that L.A. testified that Thrasher rubbed his clothed penis against her while she was played a video game. She clarified the touch was not skin to skin; but still, she felt he touched the outside layers of her clothing with his clothed penis. Specifically, she described, "[i]t was just his bulge. And I had my clothes on, so I didn't really feel it on my skin because I had a hoodie on and then I had my pants on. So[,] I didn't feel him touch my skin, but he was touching my-- the outside of my clothes, my body right here." By her clarification, L.A. made it clear that she felt Thrasher's "bulge" rubbing against her hip and arm.

The testimony of a child sexual abuse victim alone is sufficient to support a conviction for indecency with a child by sexual contact. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1) (uncorroborated testimony of child victim is sufficient to support conviction for sexual offense if child victim was 17 years of age or younger at time of offense). Additionally, a child victim's descriptions of what happened to her need not be precise and she is not expected to express herself

16

at the same level of sophistication as an adult. *Ryder v. State*, 514 S.W.3d 391, 396 (Tex. App.—Amarillo 2017, pet. ref'd).

In addition to L.A.'s testimony, L.A.'s mother corroborated her testimony. Her mother testified she noticed that L.A. looked scared and shocked, she was hugging her knees, she had watery eyes, and she cried when she reported that a man had rubbed his erect penis on her arm and rubbed her. With a high level of certainty, L.A. later identified Thrasher in a police-photo-lineup, claiming he was the person who had rubbed his private part on her. Also, the incident report prepared by Dave and Buster's described that L.A. claimed a man was following her and rubbing himself up against her. There were also instances in L.A.'s testimony where it appeared that she demonstrated actions for the jury.

The trial court, and this Court, must "give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Jurors are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. From L.A.'s testimony, other witness testimony, and courtroom demonstrations, the jury was able to draw reasonable inferences that L.A. felt or perceived Thrasher's clothed penis rubbing against her although no skin-to-skin contact had occurred. *See Roe*, 660 S.W.3d at 782 (citing *Resnick,* 574 S.W.2d at 560 and *Tienda*, 479 S.W.3d at 873). We must assume the jury made inferences in favor of its verdict. By the trial court concluding otherwise, it drew inferences and resolved conflicts against the jury's verdict.

### (2) *Evidence of causation*

Thrasher also asserts the trial court did not abuse its discretion by concluding there was no evidence that he caused L.A. to take any action constituting sexual contact. By the wording of the reindictment charging him with the offense, he asserts the State alleged he "caused L.A. to engage in sexual contact," not that he "engaged in sexual contact with L.A."

Here, the charging instrument alleged Thrasher "intentionally or knowingly cause[d] [L.A.], a child younger than 17 years of age, to engage in sexual contact by touching her body with his genitals[.]" The indecency with a child charge defines causation as: "[a] person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04. A defendant who initiates and directs sexual contact may be a "cause" of the result. *See Gonzales v. State*, No. 05-18-00895-CR, 2019 WL 3059878, at *4 (Tex. App.—Dallas July 12, 2019, pet. ref'd) (mem. op., not designated for publication). To find Thrasher guilty of the offense, the jury had to find beyond a reasonable doubt that Thrasher caused L.A.'s body to touch his genitals. *See* TEX. PENAL CODE ANN. § 21.11(c)(2); *see also Baker v. State*, No. 05-18-01352-CR, 2020 WL 2059914, at *4 (Tex. App.—Dallas Apr. 29, 2020, pet. ref'd).

Here, the jury heard evidence that Thrasher rubbed his penis against L.A.'s body. "[I]ntentionally touching someone is the same as causing them to touch the actor." *See Daniel v. State*, No. 03-16-00061-CR, 2016 WL 4429920, at *2 (Tex. App.—Austin Aug. 18, 2016, no pet.) (citing *Pizzo v. State*, 235 S.W.3d 711, 718 (Tex. Crim. App. 2007)). A rational jury could have reasonably concluded that, by his touching of L.A.'s body with his genitals, that Thrasher caused L.A. to come into contact with his genitals and therefore, he caused her to engage in a sexual

contact. Regardless of the wording of the indictment, the evidence was sufficient to prove he caused L.A. to engage in sexual contact because he touched her with his genitals.[3]

Viewing the evidence as we must, a rational jury could have found beyond a reasonable doubt the essential elements of the offense; specifically, that Thrasher touched L.A.'s body with the bulge of his penis with intent to arouse or gratify his sexual desire. Accordingly, the evidence is sufficient to establish the requisite elements of indecency with a child by sexual contact as charged. By concluding otherwise, the trial court abused its discretion.

We sustain the State's sole issue.

### III. CONCLUSION

We reverse the order granting Thrasher's motion for new trial and we reinstate the jury's verdict and the trial court's judgment.

GINA M. PALAFOX, Justice

July 27, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

(Do Not Publish)

---

[3] The trial court included a conclusion of law stating, "[t]he State's failure to prove the statutory language of indecency with child by contact, as pled in the charging instrument is a material variance." On appeal, the State asserts that, even if we found a variance existed between the charging instrument's language and the proof at trial, the variance was not material and did not prejudice Thrasher's substantive rights. The State further urges the wording of the indictment provided Thrasher with adequate notice of the charges against him such that he was able to prepare a defense, and no evidence was presented at the new trial hearing establishing otherwise. In response, Thrasher argues a material variance existed because the State chose not to allege that Thrasher engaged in sexual contact; but instead, the charging instrument alleged he caused L.A. to engage in sexual contact. Because we conclude the evidence was legally sufficient under a hypothetically correct jury charge, and the jury charge application paragraph accurately set out the law as was authorized by the indictment, we conclude there is no need to address the State's contingent argument. *See* TEX. R. APP. P. 47.1.